May it please the court, James Thompson from Ora, Carrington, and Sutcliffe on behalf of Appellant Carlos Castro. I'm actually going to be splitting my time with my colleague Ms. Najad and we'd like to reserve three minutes for rebuttal. Alright. The rest of Carlos Castro's life subjected to the harshest living conditions in the prison with no real meaningful opportunity for any sort of human contact. That's what's at stake here. This isn't a housing decision. This isn't a constriction of some right to associate as the defendants now seem to contend in their supplemental briefing. This is a liberty interest. As a result of being validated wrongfully as a prison gang quote unquote associate, whatever that is, Mr. Castro has effectively been revoked any opportunity for parole. Mr. Castro, he was ultimately convicted of second-degree murder, felony murder, because he was with someone who decided to shoot and kill someone else. I find it ironic that that person, the shooter, who admitted to that killing has been paroled for more than a decade, yet Carlos has still stuck in the chute. Mr. Castro spent 16 years in solitary confinement as a result of his wrongful validations. He was first validated in 1997. He had a trial on that and he proved he was not- You know what the problem is? And I've read your briefing. I don't say it's the problem, but a problem as I listen. Let's assume you make the most persuasive argument you can and we're all persuaded by it. We've never seen Mr. Castro. We don't run the jails. We can't run the jails. So aren't you asking us to know something that we can't know? No, Your Honor. I think the issue here is that even the people within the jails themselves here don't know, I think, is the clear point, is they don't even know how to administer these vague and overbroad regulations that they've set forward. I'm not suggesting the subject- But they know how to change them. They could. In fact, they have a definition of associate in place or a definition that's related to associate in place that would be a viable one. They actually recognize this. The California Department Operations Manual actually has a definition that would be viable here, yet they simply put forth a definition that no one can apply. You can't apply. I can't apply. We have a chart that we put forth in our opening brief and we put forth also in our supplemental briefing that shows no one can apply this. So he had a validation in 1997. We demonstrated that that validation was flawed. So it was revalidated in 2009. But again go ahead, Your Honor. No, I understand what you're saying, I think. And I understand why this person for 23 hours a day is in solitary confinement with no social contact with anybody. And that's going to be the rule for, it's already been for some 16 years and it's going to be for some years into the future. In fact, at the moment, for life. That's the record seems to say. So I understand all the theories. But on what theory do we now say to the prisoners? Oops. Take him out. Put him there. We don't know a thing about it. And I do know that there was somebody in prison, and the history is all there for anybody and I'm not saying that's going to turn the case, but he was sitting in his cell not doing, and he was running a gang out in the street and he was running it. I mean, they were, he was the head honcho and he was confined in prison. See there are a lot of things that I don't know how we know it and how then we, how courts can regulate. Do you understand what I'm asking you? I do. And I think that the framework, Your Honor has actually pointed us to one of the tests, which is Turner be safely, and the other would be the constitutional vagueness test. That's the framework in which you should evaluate this, this regulation. And it fails under either of them. And the point here, I think, also stems, you know, this isn't an instance where you have an inmate who's running the prison and doing all the things that you mentioned. You look, you look at the evidence here, and the district court failed to do so, and that's one of the basis upon which this court should reverse. But if you look at it, he's, he's validated because he sent a happy birthday card. That's what's taking away his liberty. So certainly I understand there, there has to be some discretion, and we're not suggesting that you take all discretion away. We're merely suggesting that you have to have a definition of associate that's capable of consistent application, and it's not a grossly exaggerated response as you have here. Let me, let me, let me, let me stop you just a little bit. This is not the first time we've seen this case. It's the third, Your Honor. When, when Mr. Castro has put this case together before, the definition of associate or the vagueness of the definition of associate, are you suggesting that was never involved in what he put in, what he alleged previously? It was. It was alleged previously, as I understand it, and, and since it was alleged previously, and we have determined that there were two problems in his, in his particular situation. The first was which officials actually make the decision, and the second is whether  But we didn't suggest that the definition of association was a problem at all. Why are we not bound by that decision? Because there's multiple reasons. One. One. Just give me one good one. Because there's been new evidence adduced in this case by way of 13, 14 different depositions that we've put before, Your Honors, new evidence which clearly demonstrates the unconstitutionality of this regulation. There's well-established case law that the law of the case does not need to be followed if there's new evidence adduced or manifest injustice would result. And here I would proffer this would also result in manifest injustice if you were to essentially strip away this man the rest of his life and put him in solitary confinement as a result of sending a birthday card to someone. Okay. So we talk about this regulation, and we talk about it's vague. What's your best case for the idea that vagueness principles apply at all to administrative regulations? So it's actually I mean, to be fair, Turner really doesn't talk about vague. It's about constitutional violation. What's your best case that says that vagueness principles apply to administrative rather than disciplinary prison regulations at all? It's a limited liberty interest. In the case that the defendant cites, Alphonsus v. Holder, they recognize that these vagueness principles extend further than just to criminal statutes, and they apply to circumstances such as here where you would have harsh consequences. Is that your best case? I believe so, Your Honor. All right. Then if that's your best case, I want to make sure about that. Why couldn't I not determine this claim on due process grounds? You could. Well, it seems to me a vagueness claim is a due process claim. And it seems to me that I could look at the Supreme Court who has said in Hewitt v. Helms that due process clause does not independently protect an inmate's right to remain in the general prison population. That the best we can find here is a due process claim to notice and a hearing which your client received. So in Wilkinson, it suggested that this liberty interest that we're seeking here, which is a whole host of things. One, it's being placed in solitary confinement. Two, it's having educational programs, vocational programs stripped. And it's also the effective revocation of parole. All of those things create an atypical and significant hardship that's different from the rest of the inmates. So this is a protected liberty interest, so to speak. Well, I have never found any place that says that it's a protected liberty interest. I've had a limited liberty interest in Munoz v. Rowland, and then I look at what the Supreme Court says. And it seems to me that the Supreme Court has held that the due process clause does not independently protect the inmate's right to remain in general population. So even then, it seems, and if I read Hewitt, due process only requires that the inmate receive some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation. That's 476 of Hewitt. So why have we not had the due process that he needs? He had a chance to go talk to the prison official. He had notice of exactly what the prison official was going to do. He had notice exactly what the prison official was going to say. And he had a chance to combat back against that. Two different things. One, because it was vague. The regulation itself, pursuant to which- He could present the vague to the prison official. He had a chance to do that. That's all that's required. The prison official then decides what the situation is. And the district court found that the prison officials followed every one of these steps when conducting the remedial validation. If you look at the chart that lays out what the various prison officials who are looking at what this definition means, not one of them could properly apply it. If you have a definition that on its face is invalid, and if you have something that's not capable of consistent application, effectively how could Mr. Castro respond to that? If a birthday card constitutes something that's evidence of gang activity under this definition, how does he know what is- So he knew what he was going to face when he walked in there and talked to the prison official? He didn't know what, when the conduct was being performed that he's being validated upon. He had no idea what conduct was or was not allowed. Literally, he's placed by the- But you're missing my point. The point isn't what he did or what he didn't do at the time. The point is he was given notice of what they thought was his problem. And he was given a hearing where he could say, the regulation's bad. I didn't know. I didn't know what the situation is. You shouldn't be able to go. And the official makes the determination, given all the due process he's entitled to, in making that decision. And so the prison official has made his decision and we're stuck. But the prison official here is wrong because they're applying an unconstitutionally vague regulation in the first instance. That regulation gives ultimate and complete discretion for them to do whatever they want. They don't even understand the regulation. So how could you have a meaningful opportunity to be heard? How could you have proper notice? And I also want to touch at some point on some evidence. If you look at the evidence itself here, you'll see they had no idea what they're doing because they're providing evidence that's a birthday card. That's not evidence of gang activity. That's why, and I wanted to mention, not only is the vagueness, but also there's some evidence requirement under the Federal Constitution pursuant to Bruce and other cases. That also is important here. You have to have something behind that. You can't just go into a hearing and plug your ears. You have to look behind that. And when you look behind that, all of the source items here that they presented are hopelessly flawed and they don't demonstrate any sort of gang activity. They don't demonstrate that he's, quote, unquote, an associate. But no one even knows what that means. You're down to two minutes of your lesson, about a minute and 30 of your total time. So I probably should defer to my counsel to speak. Thank you, Your Honor. If you want to, we'll give you a little bit of time. Thank you. Appreciate you. Thank you, Your Honor's mate. Please, the Court. Jennifer Najad from Orrick, Harrington and Sutcliffe. Your Honors, after finding Mr. Castro never received any opportunity to be heard in connection with his 1997 validation, much less a meaningful opportunity to be heard, the district court ordered that Mr. Castro be granted a new validation in 2011, a remedy to which defendants stipulated. Once a new validation was ordered, Mr. Castro became entitled to the full panoply of constitutional rights that attach in such a situation, notice and an opportunity to be heard, as Your Honors referenced, in addition to some evidence with the requisite indicia of reliability supporting the validation. But, Your Honors, the district court never reviewed the evidence in this case. And that means this Court, no Court, has ever reviewed the evidence used to validate Mr. Castro in 2011. While this Court previously reviewed some evidence, that was evidence that was used to validate Mr. Castro in 1997, and none of those source items were used in 2011. Your Honors, if the Court were to review the evidence, it would see that Mr. Castro's validation was not supported by a single piece of evidence with the requisite indicia of reliability. There were five source items used to validate Mr. Castro, two confidential memoranda, two sets of drawings, and a card, which my co-counsel referenced, in which Mr. Castro wishes happy birthday to another inmate in solitary confinement. None of these items of evidence meets the constitutional sum evidence standard. The information in the two confidential memoranda consisted exclusively of hearsay, which the Constitution and Title 15 itself prescribe. The drawings were similarly flawed. They were not created by Mr. Castro. He didn't even know of the symbols' existence in the drawings. I know that might sound silly, but, Your Honors, if you actually look at the source items, these are tiny little symbols that appear in the corners of the drawings, which defendants' own experts, they needed the drawings enlarged to be able to see those symbols. In addition, defendants' experts have recognized that the symbols contained in these drawings were not unique to the EME. Moreover, one of these drawings in particular, a warrior shield, is something that's actually contained in prison art books that are used as part of the prison's educational curriculum. As for the birthday card, CDCR officials, they don't claim that there are any sort of gang messages contained in the birthday card. Rather, they say that just the act of communicating with someone who is a validated gang associate constitutes gang association. Well, that's not exactly what they said. They said, you signed it, it went to a validated member. There were not only you signed it, but three other inmates signed it in addition to you. And of those, two were also validated associates of the gang. The third was an alleged affiliate of the same gang. And they suggested that that was some evidence. Your Honor, Lieutenant Barnaburg actually, he pointed out, he initially thought that all of the signatories of the card were actually validated gang associates, and it was only after our hearing where we raised all of the flaws in the evidence that he went back and found one of the associates was listed as a non-validated EME associate. And we said, what does that mean, a non-validated EME associate? And as you'll see in his findings, he actually goes back and says, you're right. One of these people was not an EME associate. So therefore, some of the signatories were validated EME associates. Some of them were not. And we're talking about some evidence. That's not much. Your Honor, I agree that some evidence is not a very high standard. But it is a standard. Well, I understand, and that's why I'm worried. He was a part of a select group of inmates who signed the card. Two other members of the group were validated EME associates. I have a tough time understanding why that isn't some evidence to conclude that his alias, Amos Kuna, would be an affiliation with an EME, with the gang. So first of all, Your Honor. Some evidence. If we're going to go to the card only. Right. So one thing to bear in mind is half of the card signatories were not EME associates. Mr. Castro is not. Well, I understand. That's a good jury question. But that's not necessarily a way to attack some evidence. Your Honors, I recognize that it's not a very high threshold. But there is a threshold that must be met. And none of these source items meets that threshold. And one thing that's worth bearing in mind, and the reason we think this is appropriate for remand to allow the district court to consider whether the evidence meets the sum evidence standard, is because previously this court found that the evidence used to validate Mr. Castro in 1997 did meet the sum evidence standard. And when it was remanded and we were given discovery, that court, excuse me, through depositions, it actually came out, defendants' own experts acknowledged, they recognized that all three source items were actually deficient. So they didn't meet the sum evidence standard. So this is the type of. So what you'd like us to do is to remand to Judge Alsop to conduct the sum evidence analysis. Yes, Your Honors. You would not have us decide that in the first instance one way or the other. Yes. I see my time has expired. May I make one brief additional point? Sure. Your Honors, I've been working on this case for the past three years since I first became an attorney and joined ORIC. And I just had the opportunity to meet my client for the very first time last week. And when I met him, I was struck because I realized this case is about a man, a man who is intelligent, a man who is a father, a man who was on the right track when he was in the general population. He got his AA. He was involved in vocational programs. This is a case about a man who spent the past 16 years in a small cell for 22 and 25 years in a large facility, based upon a flawed validation procedure. Your Honors, we ask that you help us ensure that justice is served as you did the past two times we were before this Court. Thank you. Thank you, counsel. May it please the Court. Jose Zoledon Zepeda, Deputy Attorney General for Defendants. This is the third time this case has been before this Court. In 2002, this Court held that the evidence used to validate Mr. Castro was sufficient, and it also held that there were issues about whether – on two specific questions. One, who was a critical decision-maker to assign Mr. Castro to the security housing unit, and two, whether Mr. Castro, in fact, had an opportunity to meet with that individual and express his views. Judge Hall subsequently held a hearing, found that there were certain deficiencies in order-specific relief, and defendants went ahead and granted Mr. Castro the relief that the Court accorded. We submit to the Court that it's sufficient at this point and that the case was probably terminated by Judge Alsop. Why shouldn't he have gone ahead? I'm sorry. No, no, go ahead. There's something unusual about this case, and we're not going to speculate or try to guess what it is. Do you know what it is? Well, Your Honor, the – I'm not sure I quite understand the question. I mean, I think it's unusual in the sense that it's been up to this Court now for the third time, and it's been going on in the district court for almost 15 years. In that case, it's unusual. Well, some of the facts are undisputed. One of them is that he is in isolation, and the isolation is near total. Isn't that one of the facts? Yes, Your Honor. And he has been for some 16 years, and his schedule, if he serves a sentence, to be so, separated for life. Then it also is clear, and the record is here, that he wasn't the only person involved in the crime, and that others who were involved in the same crime have had different degrees of treatment. So there must be something unusual that we don't know about on this record. There's definitely a number of facts in this case that are not necessarily before this Court on appeal. And – but in terms of if the Court – if Your Honor is referring to the facts about – that counsel pointed out about his co-defendant having a different sentence, I submit to the Court that that's not relevant to the issues on this case. No, I agree with you, and quite often, two people who are doing the same thing at the same time don't get the same sentence. Everybody who's been in this business a minute knows that. But there's something strange about the case. You don't think the Court would think that when we get this record time after time? It does strike me as unusual, although I don't have the benefit of having been on the plaintiff's counsel has been. But I submit to the Court, and it's definitely not a usual run-of-the-mill case in terms of the validation type of process. I mean, Mr. Castro has had numerous validation procedures. He's had the benefit of the representation of three attorneys at his validation hearing, which is not something that's usual. That's not something that the Due Process Clause requires. He had the opportunity to present evidence at the hearing. The plaintiff's counsel presented over 60 pages of briefing when the prison official went ahead and validated Mr. Castro. And what that demonstrates, Your Honor, is that Mr. Castro has received more than the process at sue under the Constitution. Except he never got some evidence determination by the district judge. That's the problem I have with your argument, is you made a motion to terminate, and I can understand what the district court was thinking. He directed you to do certain things or your clients to do certain things, and they did them. But until today, we don't have anything in the record on a judicial determination of whether the sum evidence standard has been met or not. So that's one thing the district court didn't do. And the reason why that happened is because plaintiff's counsel urged the Court actually it was a stipulated request of the Court, that the validation, the later validation of procedural protections, that that validation focus on Mr. Castro's current gang associate status. And as a result, there was no objection voiced by plaintiff's counsel that the district court, therefore, had to subsequently, before the actual validation, go ahead and look at the evidence itself. Moreover, the fact of the matter is the way this case has worked itself out is, in the first instance, Mr. Castro's counsel was concerned that he did not have his procedural due process met. In 2002, this Court held that there was a question as to some issues. It held that there was some evidence. So the case went back on that limited issue, and that's what the district court, Judge Alsop's remedial order in 2011, was addressed to. It's the district court emphasized. Well, I understand that, but I mean, I think that the plain fact is we now have a sum evidence issue in front of us that the district court never passed on. And normally, we would say, well, we should send that back to the district court to have its views before we decide it in the first instance. I agree, Your Honor, that normally that would be the course that the court would take. Given that this case has been before this Court three different times and that this Court has already addressed the evidence, at least as it was back in 2002, and given the fact that the sum evidence standard, as Judge Smith pointed out, is minimally stringent, I submit to the Court that there's sufficient evidence at this point for this Court to make a determination whether the sum evidence standard has been met, given the record as it is. There's so much time and effort that has been expended to this litigation that we submit to the Court that there wouldn't be much of a benefit to sending it back to the district court at this level, although it has been ---- Do you have precedent for what you're arguing? There's a general case law that says that the Court can affirm the district court decision on any basis as presented on the record, Your Honor. And I can go ahead and provide supplemental briefing on that. That we haven't addressed that explicitly by compulsion. Well, it's going to be my question, because it seems to me one would want the district court to have a chance on some evidence rather than me on appeal, just read what there is. Well, you'd agree that Judge Alsop has extensive experience with prison. I mean, I'm sitting up in Montana. I don't know whether there are birthday card cases out of that prison or not. I'd like to go ahead and address that specific point, Your Honor. I don't think a birthday card in Montana would be such a big deal, but it's down here. If it were a birthday card that was from Hallmark and that was sent to someone on Valentine's Day who's not in prison, who does not have a history of being a convicted criminal and as well as having some gang activity, I'd submit to the Court that there would be some concerns about whether that's some evidence of gang activity. But as Judge Smith pointed out, this was not just a birthday card in isolation. It's a birthday card, no pun intended of course, this was a birthday card that was sent in a segregated security housing unit to a validated gang member. It was signed by three other individuals, two of whom had been validated for gang activity and one of whom is considered a gang affiliate. There were two other individuals in that same pod who did not sign the card, and those individuals were not affiliated. The birthday card was not signed with someone's name, it was signed with prison monikers, so it's not as if it's just a birthday card in the abstract. I would submit that under the minimally stringent, some evidence standard, that would be sufficient. But I do understand the concern about having this court- What I'm just saying, I mean, Judge Ossoff has a better view of the, at least he's had more experience with this particular prison than I have, although we do see a lot of prison cases to be sure. So why shouldn't, why shouldn't the district court make that determination? If that were the court's determination, we think that there's sufficient basis and authority for this court to go ahead and address this some evidence standard. Nevertheless, if the court's, if the court determines that it would be better for Judge Ossoff to go ahead and assess that case, then a limited remand for that particular issue would not be inappropriate. And but given the history of this case, and I just want the record to be clear about what's the specific issue that Judge Ossoff has to go ahead and deal with on a minimum level. Right. Well, you've got, what do you have on some evidence? You've got the hearsay statements and the birthday card. Anything else? Yes, Your Honor. There's the, there's the drawings. There were five items of validation. There were the prison drawings. In terms of the hearsay- The prison drawings, yeah. Pardon? Yeah. I'm just speaking to myself. So you've got, you've got four things, right? In terms of the hearsay objection, obviously, under Zimmerle, the court, the district court, or prison officials, rather, can go ahead and consider evidence that's hearsay if it bears sufficient indicia of reliability. There was a handmade drawing of the eternal war shield, which was hand-drawn. I mean, Mr. Castro's counsel says there's no evidence that he drew it, but it was found in his cell, his single cell, it was drawn by hand. So as prison officials recently found, that was indication of gang activity. I could go ahead and go through the five items of evidence if the Court would like me to, but I think it's, given the sum evidence standard, I don't think that's necessary to look at all five items of evidence, because any of these items in themselves would be sufficient under the Minimally Stringent Standard. If the Court would like, I can go ahead and address the vagueness, or if the Court has any questions. Okay. As we submitted in our supplemental brief, the vagueness challenge fails. Besides the legal issues that we point out, what I think is really important to highlight is the fact that there's no indication, there's nothing that Plaintiff's counsel has brought to the Court's attention that indicates that Mr. Castro himself ever thought that the definition was vague. What he said all along in his complaint was that he was not a gang associate. He complained that he was given notice that he was being considered as a gang member rather than as a gang associate. There's a quotation that we pointed out in our supplemental brief where he explains the difference between a gang associate and a gang member. So we submit to the Court that there's no evidence that there was vagueness as applied for legal reasons, which we've outlined. Any has applied, any facial vagueness challenge similarly fails. So if there's specific questions, I'd be more than happy to address them. Otherwise, I would submit on our briefing. Any further questions? No. Thank you. Thank you. We'll give you a couple minutes for rebuttal. I have a lot to say. I'll try and be brief. So going through, you posited the question of whether or not you should actually look at the evidence or if this is something that should go back. Well, in fairness, I think we can. I mean, we've looked at that before, but the question is whether we should. You certainly can. The issue here is we spent three hours, actually not myself, my colleagues spent three hours walking through with Mr. Barnberg. And the issue is you're peeling an onion here. It's not maybe it looks just from his face, you start to say, oh, okay. When you actually think through, when you look at all the flies, you see that there's no indicia of reliability. And I want to go back to this birthday card. That's what we've been talking about. And this flies in my face as being the most egregious example. So he says, oh, well, who look at who signed this card? Let's look at it. Castro is housed in a pod of eight individuals. And I believe seven of the eight of them are somehow either, quote, unquote, affiliated, which is an even more nebulous and vague definition of associate than we have, but he's surrounded purposely by the California Department of Corrections, by other individuals who are EME associates, affiliates members, therefore, sending this to anybody would have that same exact effect. If he speaks with any of them, it has the same effect. He's involved in the prison gang by doing that. That's a ridiculous and untenable position. It's not unheard of, though. I mean, we do have a lot of cases on affiliation where they're pretty tenuous bits of information that connect them with any gang activity that are sustained. Understood. But I submit to you that if you start going through this, you will see that all of this stuff has absolutely no indicia of reliability. The hearsay statements, similarly. Their own regulations prohibit you using exclusively hearsay. But, and they know this. Barnabas says, I understand this. He's the IGI who actually validated it. But at the end of the day, he went ahead and he submitted hearsay statements and confidential memorandum. These are all things that, well, even though I understand it's a minimum threshold, these items don't need it. Sending a happy birthday card simply doesn't need it to somebody who's in your pod and that there's no sort of gang activity anywhere identified in that card. We aren't going to try to run the prison, but quite often you send a birthday card to somebody who's not in the same pod with you. They're in the same pod with you, you just yell out, happy birthday. You could. I never actually been in that pod, so I don't know how far away they are. Well, when you go to a pod, you'll see that somebody here, you could almost whisper happy birthday and the guy down at the other end will hear you. So we have testimony from. We're not deciding the case on that. We're just, we're looking at what the prison has done and we're going to decide whether what they've done is reasonable or whether it violates constitutional rights. Understood. There's testimony from the prison guards in this case that we submitted to you that said they're doing what you just said, whispering happy birthday to somebody else who's in your pod. If they happen to be deemed a prison gang associate, whatever that means, that constitutes gang affiliation. What they're effectively saying is, well, all speech altogether. Can't receive mail, maybe your mail has a gang symbol in it. How would you know if you're not in the gang? Effectively, everything's verbatim. Well, you've run over your time. Do you want to make one or two quick points before? So, yes. I'd like to go back to the vagueness prong and the fact that there's some suggestion of a waiver of this. So Mr. Castro raised in 1997 1998, actually, very clearly that he was prohibit a meaningful opportunity to be heard. He's pro se. The fact that he didn't use the buzzword constitutional vagueness in there, if you have such a vague statute or such a vague regulation, it deprived him a meaningful opportunity to be heard. Okay. Next point. I believe that's all. Thank you. We're running a little late, and I think we do have your argument in hand. So we thank all of you for your arguments this morning. The case will be submitted. The decision will be in recess. All rise.
judges: Farris, Thomas, Smith